FILED

AUG 1 0 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: **20CR03726-JLS** |
| Plaintiff, | |
| v. | **FINDINGS OF FACT AND ORDER OF DETENTION** |
| Miguel SOTO, | |
| Defendant. | |

In accordance with Title 18 U.S.C. § 3142(f) of the Bail Reform Act of 1984 (18 U.S.C. § 3141, et seq.), a detention hearing was held on August 4, 2021, to determine whether Defendant, Miguel SOTO, should be held in custody pending trial on the grounds that he is a flight risk. Assistant United States Attorney Courtney Strange appeared on behalf of the United States. James Johnson of Federal Defenders, Inc. appeared on behalf of the Defendant.

Based on the evidence proffered by the United States and the Defendant, the Pretrial Services Officer, and the Complaint issued against the Defendant on June 11, 2020 by this Court, the Court concludes that the following facts establish by a preponderance of the evidence that no condition or combination of conditions required will reasonably assure the appearance of the Defendant.

# I

## FINDINGS OF FACT

A.    Nature and Circumstances of the Offense Charged (18 U.S.C. §3142(g)(1)):

1.    The Defendant is charged in Criminal Complaint No. 20MJ09294 with the importation of 6.12 kilograms (13.49 pounds) of a mixture and substance containing a detectable amount of methamphetamine (Count 1), and 5.1 grams, of a mixture or substance containing a detectable amount of N-phenyl-N- [1-(2-phenylethyl)-4-piperidinyl] propenamide (Fentanyl) (Count 2), all in violation of Title 21, U.S.C., §§ 952 and 960. Therefore, probable cause exists to believe the Defendant committed the charged offenses.

2.    The charged offense in Count 1 is an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C.§ 801, et seq.).    Therefore, there arises a presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required. See, 18 U.S.C. § 3142(e).

3.    The offense charged in Count 1 carries a minimum mandatory sentence of 10 years and a maximum sentence of life. See, 21 U.S.C. § 960(b)(1)(H).  According to the United States Sentencing Guidelines, the Base Offense level is 34.   See, USSG § 2D1.1(c)(3).  Assuming the Defendant's criminal history score places him in Criminal History Category I, see, USSG § 4A1.1, the sentencing range for the Defendant is 151-188 months in prison.

B.    Weight of the Evidence Against the Defendant (18 U.S.C. §3142(g)(2)):

1.    On June 6, 2020, at approximately 12:34 a.m., Miguel SOTO (SOTO), a United States citizen, presented a United States passport and applied for entry at the Calexico, California West Port of Entry through the vehicle primary lanes.

2.    Customs and Border Protection Officer (CBPO) M. Gerardo was the primary officer assigned to vehicle lane 7. SOTO was the driver and sole occupant of a gray 2008 Toyota Scion (Toyota), bearing California license plates. CBPO Gerardo obtained a negative customs declaration from SOTO. SOTO told CBPO Gerardo he was returning

home to Holtville, California after having visited his mother in Mexicali, Mexico. CBPO Gerardo released SOTO and the Toyota.

3.     CBPO W. Lopez was conducting Anti-Terrorism and Contraband Enforcement Team (A-TCET) operations when he observed the Toyota leaving lane 7. CBPO Lopez observed SOTO holding the steering wheel with a very tight grip so he directed SOTO to drive through the Z-Portal. SOTO asked CBPO Lopez if he had to drive through the Z-Portal and CBPO Lopez told him he was chosen for it.

4.     Z-Portal operator CBPO J. Gaytan screened the Toyota with the Z-Portal and observed anomalies in the vehicle's dashboard. CBPO Gaytan alerted CBPO L. Mendez to park the vehicle off to the side to further inspect the anomalies in the dashboard of the Toyota.

5.     A Canine Enforcement Officer (CEO) was screening vehicles with his Human/Narcotics Detection Dog (HNDD) in the Vehicle Secondary (VS) lot when his HNDD alerted to the Toyota. The CEO conducted a further inspection of the Toyota and located packaging in the driver's side dashboard.

6.     In secondary inspection, the Secondary Officer, CBPO J. Arredondo obtained a negative customs declaration from SOTO. SOTO told CBPO Arredondo he was heading to Holtville, California. The CEO removed the bottom panel of the dashboard and found a package containing a white crystal substance.

7.     CBPO Arrenondo secured SOTO and escorted him to the VS office. CBPO Arredondo noted that SOTO saw the bottom of the dashboard was removed and then proceeded to shout "fuck." SOTO then asked CBPO Arredondo if his vehicle was going to be seized. CBPO Arredondo conducted a pat down of SOTO's person and no additional illegal substances were located.

8.     CBPO Arrendondo continued with a seven-point inspection of the Toyota and located 12 packages containing a crystal like substance in the dashboard area. Next, CBPO Arredondo located a container on a keychain with the keys from the Toyota. CBPO Arredondo opened the container and located 23 pills containing the letter M and the number 30.

1    9.    During the Toyota's inspection, CBPOs discovered 12 packages in the
2 dashboard area of the Toyota. Samples of the packages were field-tested and tested positive
3 for the properties of methamphetamine. The combined weight of the narcotics was 6.12
4 kilograms (13.49 pounds).

5    10.    Additionally, 23 pills containing the letter M and the number 30 were in a
6 container on a keychain with the keys from the Toyota. Samples of the pills were field-
7 tested and tested positive for the properties of Fentanyl.

8    11.    HSI Special Agents J. Rawley and K. Klein interviewed SOTO. SOTO was
9 advised of his rights per Miranda. SOTO stated he understood his rights and was willing to
10 answer questions without the presence of an attorney. During the interview, SOTO admitted
11 to smuggling the drugs to make money. SOTO said he was going to be paid $2,000 to
12 smuggle the drugs into the United States. SOTO admitted to successfully smuggling drugs
13 into the United States approximately two weeks prior. SOTO stated the Fentanyl was for
14 his personal used which he obtained at a pharmacy. SOTO was in possession of $982 of
15 United States currency. SOTO admitted that most of the currency he was in possession of
16 was from the proceeds from when he previously smuggled drugs into the United States.

17    C.    History and Characteristics of the Defendant (18 U.S.C. § 3142(g)(3)):

18    1.    Defendant has foreign ties and travel.

19    2.    Defendant has a history of substance abuse.

20    3.    Defendant failed to appear in this case and remained a fugitive for 5 months
21 until his arrest in Nevada.

22                                          **II**

23                            **REASONS FOR DETENTION**

24    A.    There is probable cause to believe that Defendant committed the offenses
25 charged in Criminal Complaint No. 20MJ09294 with the importation of 6.12 kilograms
26 (13.49 pounds) of a mixture and substance containing a detectable amount of
27 methamphetamine (Count 1), and 5.1 grams, of a mixture or substance containing a
28 detectable amount of N-phenyl-N- [1-(2-phenylethyl)-4-piperidinyl] propenamide
(Fentanyl) (Count 2), all in violation of Title 21, U.S.C., §§ 952 and 960.

1    B.    Defendant has foreign ties and travel.

2    C.    Defendant has a history of substance abuse.

3    D.    Defendant failed to appear in this case and remained a fugitive for 5 months

4    until his arrest in Nevada.

5                                            **III**

6                                          **ORDER**

7    IT IS HEREBY ORDERED that Defendant be detained pending trial in this matter.

8    IT IS FURTHER ORDERED that Defendant be committed to the custody of the

9    Attorney General or his designated representative for confinement in a corrections facility

10   separate, to the extent practicable, from persons awaiting or serving sentences or being held

11   in custody pending appeal.  The Defendant shall be afforded reasonable opportunity for

12   private consultation with counsel.

13   While in custody, upon order of a court of the United States or upon the request of an

14   attorney for the United States, the person in charge of the correctional facility shall deliver

15   Defendant to the United States Marshal for the purpose of an appearance in connection with

16   a court proceeding or any other appearance stipulated to by defense and government

17   counsel.

18   **THIS ORDER IS ENTERED WITHOUT PREJUDICE.**

19   **IT IS SO ORDERED.**
20   DATED: _8/10/2021_                    _____
                                            HON. RUTH BERMÚDEZ MONTENEGRO
21                                          U.S. MAGISTRATE JUDGE

22   Prepared by:

23

24   RANDY S. GROSSMAN
     Acting United States Attorney

25

26

27   _____
     Courtney Strange
28   Assistant U.S. Attorney

     cc:    James Johnson
            Counsel for Defendant